## LIME ROCK BANK *v.* PHETTEPLACE & SEAGRAVE and others.

A woolen mill estate purchased by a manufacturing firm, consisting of two co-partners, which was bought for, and applied to, the use of the firm, and paid for and extensively improved out of the copartnership funds, especially where in other respects it has been treated by the copartners as copartnership proper-ty, will, in equity, be deemed to be such, notwithstanding the title has been taken and kept in the names of the individuals composing the firm, as tenants in common; and when sold under a power contained in a mortgage given upon it by the firm, the surplus of proceeds of sale over the mortgage will be applied, in derogation of all claims against and under the individual copartners, to the payment of the debts of the firm.

Where an amicable bill was filed, at the request of all parties, to ascertain their respective rights to such surplus, the costs of the plaintiffs and of the two pre-vailing defendants were ordered to be paid out of the surplus, and as to the other defendants, no costs were to be taxed to either party.

Such a bill is not, however, a bill of interpleader, or a bill in the nature of a bill of interpleader; nor were the plaintiffs pure trustees, but simply prior mortga-gees, holding a surplus arising from the sale under a power of the mortgaged property, after payment of their own lien. It appearing that the controversy between the parties turned, principally, upon a claim of the complainants, as assignees of a mortgage of copartnership property, to retain out of the surplus,

over the mortgage money, of the proceeds of sale, a debt due to them individually by one of the copartners, the court refused to allow the mortgagees, against such surplus, their expenses in retaining and employing their counsel in the prosecution of the bill, and charged them with interest on the amount of the surplus detained by them on account of such disallowed set-off. The mortgagees, however, were permitted to retain out of the surplus the expenses of sale under the power, including the services of counsel proper thereto, as well as of insuring the mortgaged property prior to the sale, under the head of *just allowances;* and also, *five* per cent. commissions on the gross proceeds of sale, secured to them by the express terms of the mortgage.

THIS was an amicable bill, filed with the consent of all parties, for the purpose of ascertaining, by the decree of the court, their respective rights to a surplus, out of the sale of mortgaged property, remaining in the hands of the plaintiffs after the satisfaction of their mortgage.

Prior to the 15th day of April, 1852, the manufacturing firm of Seagrave & Steere, consisting of Josiah Seagrave and Marquis D. F. Steere, hired a woolen mill in Uxbridge, Massachusetts, of Edward Seagrave, and operated the same in their joint business; and on that day, purchased the same of the said Edward for the sum of thirty-five thousand dollars, taking the conveyance to the said Josiah and Marquis D. F., as individuals, in the proportion of three-quarters of the purchase to the said Josiah, and one-quarter to the said Marquis D. F. The cash portion of the purchase money—six thousand dollars—was paid out of the funds of the said firm of Seagrave & Steere, and the balance secured by five notes of the said firm—three of which, amounting to eighteen thousand dollars, were subsequently paid by the firm—and the remaining two became the property of Phetteplace & Seagrave, and were secured upon the mill estate by a mortgage to said Phetteplace & Seagrave, to be hereafter mentioned. In addition to this purchase money, the firm of Seagrave & Steere expended upon the estate upwards of the sum of forty thousand dollars, the larger portion in the building of a new mill, in lieu of one burnt, a new dam and tenement houses, and in putting gas and heat fixtures into the mill, and the balance in new machinery. During the whole time that the firm did business, this property was used exclusively in it, and was insured and inventoried as the firm property, and, from time to

time, mortgaged to secure the firm debts, in the manner hereafter stated.

On the twenty-second day of December, 1854, Josiah Seagrave and Marquis D. F. Steere, in their copartnership name, assigned said mill estate to James S. Phetteplace, in trust, for the payment of the debts of the firm of Seagrave & Steere; but, in the subsequent March, Phetteplace re-conveyed the assigned property to said Seagrave & Steere, as individuals and equal owners in fee,—the deed reciting that the trusts of the first named deed had been fully performed. On the twenty-third day of July, 1857, the said Josiah Seagrave and Marquis D. F. Steere, in their individual names, mortgaged their said mill estate to J. C. Howe & Co., of Boston, to secure certain advances made and to be made by that firm to the firm of Seagrave & Steere, under a certain contract executed by the said firms and bearing even date with said mortgage; and subsequently, on the eighteenth day of August, 1857, subject to said mortgage, mortgaged their said mill estate to the firm of Phetteplace & Seagrave, to secure the performance of a certain contract in writing, between the two last named firms, bearing even date with said last named mortgage. The Lime Rock Bank, plaintiffs in the bill, by mesne assignments from J. C. Howe & Co., became the owners of the prior of these mortgages, and of the debt thereby secured; and default having been made by the firm of Seagrave & Steere, in the payment of said debt, under, and in accordance with, a power of sale contained in said mortgage, on the twenty-fifth day of September, 1861, sold the said mill estate at public auction, to William D. Davis, for the sum of fifty-six thousand two hundred and fifty dollars, and received from said Davis the proceeds of said sale. After the payment of the mortgage debt and expenses of sale, a large surplus remained in the hands of the bank, out of which they claimed to retain, in the first instance, the amount of a promissory note of Josiah Seagrave, dated June nineteenth, 1861, for the sum of $2,254, which was held by them. Phetteplace & Seagrave claimed out of said surplus, a large amount, due to them under their mortgage, of August eighteenth, 1857. Josiah Seagrave having died in July, 1861, Jacob C.

Seagrave and Phebe H. B. Seagrave,—the former as administrator of the said Josiah, and the latter as entitled in dower to her late husband's share of said surplus,—claimed an interest in the same, as the individual property of said Josiah. After the death of said Josiah Seagrave, his surviving partner, Marquis D. F. Steere, on the fourth day of October, 1861, assigned said surplus, after payment of the mortgages to J. C. Howe & Co. and to Phetteplace & Seagrave, as copartnership property, to Thomas C. Greene, in trust, for the payment of the partnership debts of Seagrave & Steere.

The bill, setting forth the claim of the plaintiffs, made the other claimants of said surplus, parties defendant; and the amount due to Phetteplace & Seagrave, under their mortgage, having been ascertained by a master to be the sum of $23,803.38, with interest from the tenth day of April, 1862, was, by a decree of the court, entered at the March term, 1862, ordered to be paid to said Phetteplace & Seagrave. The case came on, at the September term for the county of Providence, 1863, to be heard between the remaining parties, as to the balance of the surplus, upon the bill, answers, exhibits and proofs, and was argued by *R. W. Greene*, for the plaintiffs, and by *T. C. Greene*, for himself, as assignee of Marquis D. F. Steere, surviving partner of the firm of Seagrave & Steere.

AMES, C. J. The surplus which is the subject of this suit, is, without doubt, the property of the late firm of Seagrave & Steere. It is a portion of the proceeds of their mill estate, which was purchased for the use of the firm, and wholly paid for out of its funds, and greatly enhanced in value by the large expenditures of the firm upon it. This estate was always treated by Seagrave & Steere as a part of their company property; used exclusively in their business; inventoried as a part of their common stock; insured as the property of the firm; and mortgaged to secure, and assigned to pay, the company's debts and liabilities. The fact that the legal title to the estate was originally taken in the names of the members of the firm as tenants in common, and when their assignment was released, was returned to them in that character, cannot countervail the decisive presumption aris-

ing from the source of the funds out of which it was purchased, and the purpose for which it was bought, and to which it was applied, that it was intended to be held as partnership property. The copartners are regarded, in equity, in a case like the present, as trustees merely of the legal title for the uses of the firm; and as this title has been sold by the plaintiffs under a power contained in a mortgage, for the payment of a debt of the firm, the surplus of the proceeds of sale, in the hands of the plaintiffs, must be applied to those uses. *Tillinghast, Receiver,* v. *Champlin and others,* 4 R. I. Rep. 173, 205–213, and cases cited.

The decision of this question decides all the other questions raised in the case. It denies the claim of the plaintiffs to retain out of the surplus an individual debt, due to them by Josiah Seagrave, one of the copartners, and the claim of his administrator to, and of his widow to be endowed out of, any portion of the same, in derogation of the rights of the creditors of Seagrave & Steere. It affirms the title of Thomas C. Greene to the surplus, as assignee in trust for the creditors of the firm, under a deed of assignment executed to him by Marquis D. F. Steere, surviving partner of the late firm of Seagrave & Steere, on the fourth day of October, 1861.

Let a decree be entered, ordering the plaintiffs to pay over to said Thomas C. Greene, assignee as aforesaid, the surplus of the proceeds of sale of the mill estate in the pleadings mentioned by them received, after retaining therefrom the amount of the mortgage of Seagrave & Steere, held by them, with the expenses of sale and all just allowances, and deducting therefrom the amount by them paid to Phetteplace & Seagrave, under the decree of this court, in full of the sum ascertained to be due to them under their mortgage. If the parties cannot agree to these amounts, the case must be sent to a master to settle them.

As the bill is an amicable one, and filed at the request of the parties to ascertain their respective rights to said surplus, let the costs of the plaintiffs, of Phetteplace & Seagrave, and of Thomas C. Greene, assignee, be paid out of the same, and let the decree provide, that as to the said Jacob C. Seagrave and Phebe H. B. Seagrave, neither party shall recover costs.

THE case came again before the court, at its March term at Providence, 1864, upon an agreed statement of facts, made by the parties in lieu of the report of a master, for the purpose of exhibiting to the court the several allowances claimed by the plaintiffs out of the surplus in their hands, and the objections thereto, and counter claims made by the assignee of the late firm of Seagrave & Steere. From the statement of facts, it appeared, that in addition to the amount of their own mortgage, with interest, assigned to them by J. C. Howe & Co., and the amount of the mortgage of Phetteplace & Seagrave, paid as aforesaid, under an interlocutory decree of the court, the plaintiff bank claimed to retain out of the surplus a considerable amount, arranged in eleven items, embracing the expenses of advertising and selling the mortgaged property under the power, and making a title thereto to the purchaser, which included an item of $300, to A. Fiske and R. W. Greene, for professional advice and services, about the same. Their claim also embraced an item of $781.75, with interest on the same, amounting to $10.95, for back premiums of insurance upon the mortgaged premises, paid by them on the twenty-third day of July, 1861, under circumstances set forth in the opinion of the court, and another item of $2,812.50, for *five* per cent. commission on the gross proceeds of sale of the mortgaged property, secured to them as the holders of the mortgage under which they sold, by the express terms of that instrument. The bank also claimed to retain, against the objection of the assignee of the creditors, a sum of $545, for the services of their counsel, *R. W. Greene*, in preparing, arguing and bringing to a decree, this bill in equity, brought by the assent of all parties thereto, for the purpose of settling all questions in issue between them, and denied that they were liable to the payment of any interest on the sum of money, or any portion of the same, received by them, and remaining in their hands, as the proceeds of sale of the mortgaged property. The facts relative to the disputed items are sufficiently stated in the opinion of the court, to render the grounds of it intelligible.

*R. W. Greene, for the Lime Rock Bank:*—

I.   The five per cent. commission on the gross amount of the sale, under the power contained in the mortgage, is expressly provided for in the agreement which accompanies, and forms a part of, the mortgage.   See exhibit —, annexed to bill.   It is the agreed compensation for the services and responsibility in making the sale.

II.   The credit of $781.75, and the interest thereon, amounting to $10.95, for insurance premium, is explained in the answer of Mr. Angell, cashier, to the fourth interrogatory.

III.   The bill of R. W. Greene.   The first item of this account is for professional services, in relation to the execution of the power of sale by the Lime Rock Bank.   The remaining charges relate to the present bill in equity.   The bill was filed for the benefit of the trust fund in the hands of the bank, and the trust fund has had the benefit of the proceeding.   If we regard the present bill as a mere bill of interpleader, the plaintiffs are entitled to the expenses of counsel fees preliminary to the draft, and for the drawing and the filing of the bill, and the term fees thereon, and for such other professional services as may be necessary to protect the plaintiffs in the prosecution and final determination of the suit.

IV.   With regard to interest.   The court are referred to Mr. John Angell's (cashier of the Lime Rock Bank) answer to the second interrogatory, for an explanation of this subject:—" This bank was ready, at any time and without previous notice, to pay the whole balance due whenever ordered by the court, either in funds of this city, New York or Boston, as the sum was held in reserve for payment on demand."   With regard to the surplus, after the payment of Phetteplace & Seagrave's claim, the bank have always been prepared to pay.

*T. C. Greene, assignee, for the creditors of Seagrave & Steere:*—

The defendants object to certain charges made by the plaintiffs, as mortgagees of the Uxbridge Woolen Mills, upon the surplus funds in their possession.

I.   The defendants object to the allowance of the item of $2,812.50, claimed by the plaintiffs as a commission for the sale

of said estate. The words of the contract, forming part of the mortgage, are these :—" And out of the money arising from such sales, the said J. C. Howe & Co. are to retain the amount due to them, whether payable then or maturing and falling due afterwards. Also, five per cent. commission on the gross proceeds of all sales, with the cost and charges of advertising and selling the premises, rendering the surplus, if any, to the said Seagrave & Steere." The defendants contend, that the charge of five per cent. commission was inserted in the contract by way of penalty for the non-performance of the condition of the mortgage, and that a court of equity, on payment of debt and interest, will relieve against such penalty. 2 Story's Eq. Jur. § 1316; *Nicholls* v. *Maynard*, 3 Atk. 519; see *Strode* v. *Parker*, 2 Vernon, 315; opinion Lord Mansfield in *Bonifons* v. *Rytout*, Burr. p. 1374; *Tallmon* v. *Truesdell*, 3 Wisconsin, 443. If the parties had intended the commission should be for services in selling the estate, they would have said so in express words.

II. The bank loaned their money and not their credit. As between the bank and Seagrave & Steere, the relation was the ordinary one of debtor and creditor.

III. The sum charged is too large for the service rendered. The service was a simple one of every day occurrence ; the parties could not have supposed that this sum or commission was for compensation for selling the estate.

IV. The original rule was, that the mortgagee should have nothing but debt and interest. Coote on Mortgages, p. 154, side p. 348, 349; *French* v. *Baron*, 3 Atk. 120.

V. The defendants claim, that the bank should be charged with interest on the surplus moneys received by them. The rule in relation to interest is, " that where a trustee mingles the trust fund with his own, or uses it in his private business, or neglects to invest it when it is his duty to do so, he is liable to pay interest." Hill on Trustees, p. 532, n. The sum of nearly $24,000 was received by the bank, in October, 1861, and not paid over till the following May, to Phetteplace & Seagrave. A further sum still remains in possession of the bank. Upon this last sum interest should be charged, as the bank have used it in common

with their other funds. The defendants claim, interest should be charged upon the sum paid over to Phetteplace & Seagrave, from the time they received it until paid over.

VI. The bank cannot rightfully claim that the bill of their counsel, for services in this action, should be charged upon the fund. The bank, in their bill of complaint, claimed an equitable lien upon the funds, and, in the hearing before the master, and in the argument before the court, have acted and conducted, not as a disinterested stake-holder, but as a party litigating for their own interests. If the court should come to the conclusion that the plaintiffs are entitled to the five per cent. commission, then the defendants claim that the counsel fees, for services in relation to the sale, are to be paid out of the commission, and not out of the surplus fund.

VII. The bank are not entitled to charge against the fund the whole sum paid by them for insurance of the property. They paid the memorandum checks of Seagrave & Steere, after they had failed, and when the bank had every reason to suppose they would have to sell the property at auction. They should, under these circumstances, have procured insurance for a shorter term.

BULLOCK, J. The first item objected to, as not a proper charge in full, upon the fund in the hands of the plaintiffs, considering them in the order in which they were presented by counsel at the argument, is the item of $781.75, being the amount of sundry premiums paid for insuring the mortgaged premises. The plaintiffs became the owners of the mortgage, by assignment, on the second day of July, 1858. On the first day of July, 1861, the mortgagors, Seagrave & Steere, effected the insurance in question, for the usual term of one year, the amount of the policies payable, in case of loss, to the plaintiffs. Instead of paying these premiums, Seagrave & Steere gave their memorandum checks for the amounts. Soon afterwards, and in the same month, Seagrave & Steere failed, leaving these checks outstanding and unpaid. One of the insurance companies then gave notice to the plaintiffs, that unless the premiums due to them were paid they should vacate the policy. The plaintiffs, accordingly, on the twenty-third day of the same July, paid the amount

of the several premiums. After the failure of Seagrave & Steere, the plaintiffs took possession of the mortgaged property, and in the month of September following, sold the same under the power contained in the mortgage. The mortgagors, Seagrave & Steere, agreed to keep the mortgaged premises insured; and in case of not doing so, that the mortgagees might effect insurance thereon at the expense of the mortgagors. The effect of the sale of the mortgaged premises was, to vacate the existing policies, without some new agreement on the part of the insurers, which, it is understood, they declined to make.

It is objected by Steere, surviving partner of Seagrave & Steere, and by his assignee, that they had no notice of this payment by the plaintiffs. If they did not know, it was their own fault. They, or Seagrave & Steere, certainly knew their own checks, given for these premiums, were outstanding and unpaid. The plaintiffs did no more than perform, in good faith, a contract they—Seagrave & Steere—had entered into, relating to the mortgaged property, and for the benefit of the mortgagors as well as of the mortgagees. If the mortgagors would derive any advantage from a partial return of premium, it was their business to endeavor to secure it. It does not appear that they did anything. It was due to the insurers that the contract should be executed as made. Besides, in July, 1861, the mortgagees could not tell when the property would be sold. It might remain upon their hands until the policies would expire. The condition of manufacturing industry, at the time, did not favor an early sale. Nor had the mortgagees any interest to charge upon the estate any unnecessary expense. Looking at the transaction, after the event, and we see how a part of the premium money might have been saved; but viewing it as it stood, in July, 1861, immediately after the failure of Seagrave & Steere, and neither they, nor those claiming through them, can properly object to charging upon the property an expense they incurred, in good faith, for its protection, and which the plaintiffs, in like good faith, paid and discharged. This item therefore, with the interest, is allowed.

The bill of A. H. Fiske, of $100, and the first item in the bill

of R. W. Greene, of $200, for professional services connected with the sale and transfer of the mortgaged premises, are admitted as *just allowances*, properly chargeable against the fund in the hands of the plaintiffs.

One of the purposes—if not the main purpose—of the bill, filed by the plaintiffs in this case, was to have the mortgaged property and its proceeds declared to be the individual property of Josiah Seagrave, and the surplus of the proceeds applied to the payment of his individual note of $2,000, held by the plaintiffs. After stating how the fund arose, and what specific liens exist against it, the bill proceeds at once to allege that the mill, its appurtenances, &c., were the property of Seagrave, and not of the firm of Seagrave & Steere; and that, being such, they (the plaintiffs), after the payment of the specific liens, are entitled to deduct from the surplus the amount of his individual note aforesaid, due to them, treating as the fund to be distributed, under the decree of the court, only what moneys may then remain in their hands. The several answers of Jacob T. Seagrave, the administrator of Josiah Seagrave, and of Phebe H. B. Seagrave, his widow, while admitting the validity of the plaintiffs' mortgage, and that of Phetteplace & Seagrave, and assenting to their payment out of the proceeds of the sale of the property, do not claim that the same was the individual property of Josiah, and deny any right in the plaintiffs, to apply any part of the fund to the payment of Josiah's individual note. The answers of the surviving partner—Steere—and of his assignee, also admit the validity of both of the mortgages referred to, but affirm that the property was, from the first, copartnership and not individual property, and that no part of its proceeds should be applied to the payment of the $2,000 note. The substantial issue before the court, upon the hearing of the bill, was that raised by the plaintiffs for their own benefit, and in support of which they adduced no sufficient or satisfactory proof. The bill, therefore, was not a bill of interpleader, or a bill in the nature of a bill of interpleader; nor were the plaintiffs pure trustees, but simply prior mortgagees, holding a surplus arising from the sale of the mortgaged property, after the payment of their own lien. We

see no equity in charging upon this fund, and, through it, upon the unsecured creditors of an insolvent firm, the expenses of trying an issue the plaintiffs raised for their own benefit, and which they failed to maintain by proof, especially in view of the fact that, by the terms of the mortgage and of the agreement collateral thereto, which we shall hereafter refer to, the plaintiffs were amply compensated, by a liberal commission, for all the risk they incurred, and for all the service they rendered. The remaining items, amounting to $545, in the bill of Richard W. Greene, are therefore disallowed as a charge upon the fund.

The next item in dispute is the charge of $2,812.50, the same being the amount of a commission of five per cent. upon the gross proceeds of the sale of the mortgaged property. The agreement, collateral to the mortgage, and under which the original liability of the mortgagees was incurred, contains this stipulation,—that " out of the money arising from " the sale of the mortgaged property, the mortgagees " are to retain the amount due to them, whether payable then or maturing and falling due afterwards. *Also, five per cent. commission on the gross proceeds of.*" such sale, with the costs and charges of advertising and selling the premises, &c. It appears by this collateral agreement, that Seagrave & Steere, manufacturers, applied to J. C. Howe & Co., merchants, for a loan of credit, to enable them to conduct their business with greater facility. J. C. Howe & Co. were to loan their credit to Seagrave & Steere in the form of acceptances, to an amount not exceeding, at any one time, forty thousand dollars, and for the period of five years. For this loan of credit, Seagrave & Steere were to pay a commission of two and one-half per cent. They were also to place Howe & Co. in funds to meet these acceptances, at least one day before they matured. In case they fail to do this, and Howe & Co. are obliged to protect the acceptances, and resort to a sale of the mortgaged estate, then J. C. Howe & Co. were to have additional compensation, by way of this stipulated five per cent. commission. J. C. Howe & Co., under this agreement, were liable, at one day's notice, to pay large sums of money for Seagrave & Steere. Months might elapse before they were reimbursed. This would incommode men of large

means. The mortgagees intended to be compensated for this inconvenience and risk, and the mortgagors agreed to compensate them in this manner. The language of the agreement is explicit. Considering the nature of the business in which Seagrave & Steere were then engaged, the advantage to them of having an undoubted credit, the responsibility which the creditors incurred in advancing their credit to so large an amount, and for so long a time, involving a liability on their part, to protect these acceptances upon one day's notice of inability, on the part of Seagrave & Steere, to protect them; and we see nothing so unconscionable in the stipulation, that equity should interpose and relieve against it.

On the fifteenth and sixteenth days of October, 1861, the plaintiffs received from the sale of the mortgaged estate the sum of $56,335.60, and, at the same time, applied $25,250 of the same to the payment of the principal and interest due upon their mortgage, leaving a large surplus in their hands; and, on the fifty-ninth day of the September term, 1861, (which was the twenty-sixth day of December, 1861,) by their bill, asked the direction of this court in distributing this surplus. On the seventh day of May, 1862, under an interlocutory decree entered in the cause, the plaintiffs paid over to Phetteplace & Seagrave, the holders of the second mortgage, a further sum of $23,979.68, adjudged to be due thereupon.

The defendant, Thomas C. Greene, assignee of the surviving partner of Seagrave & Steere, claims, that the plaintiffs should be charged with interest upon the sums or balances, from time to time, in their hands, after the payment of the first mortgage. The plaintiffs were prior mortgagees, holding in trust a surplus to which there were various claimants. They seasonably sought, in the proper mode, instructions for its distribution. Their cashier, whose statements are admitted in proof, says that the plaintiffs were ready, at any time, and without previous notice, to pay over the whole sum due upon the second mortgage, whenever ordered by the court, and that a sufficient amount was held in reserve for that purpose. A trustee, who is guilty of no breach of trust, and who does not unreasonably neglect to invest,

or delay in applying the funds to the purposes of the trust, is not chargeable with interest. When he mingles the trust funds with his own, and uses them in business for purposes of gain, then he may be charged with interest, as an equivalent for the profits presumed to be acquired. Here the plaintiffs held in reserve, in the nature of a special deposit, a sum sufficient to pay the Phetteplace & Seagrave mortgage, and as to that amount are not liable for interest.

After deducting the stipulated commission of five per cent. to which they are entitled, the sums paid by them for insurance and interest, and the several bills incurred in the sale and conveyance of the mortgaged property, the remaining surplus the plaintiffs mingled with their own funds, and used in their business. They further claimed the right to appropriate the same, or a part of it, to the payment of the individual note of Josiah T. Seagrave. They have retained and had the use of this sum for two years and six months and upwards. Under these circumstances they should be charged with interest upon it, at the rate of six per cent. per annum, from the time of its receipt.

The items, Nos. 1 to 10 inclusive, in the agreed statement of facts, claimed by the plaintiffs, are allowed as claimed.

The first charge of item No. 11, being $200, is also allowed; the remaining charges under item No. 11 are disallowed.

Let the account be so stated.